UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LORENZO ORTEGA, | ) | NO. SACV 05-00212-MAN |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint on March 4, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for disability income benefits ("DIB"). On March 23, 2005, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636.  The parties filed a Joint Stipulation on December 6, 2005, in which:  Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits since June 12, 2002, or, alternatively, and order remanding the case to the Commissioner for further consideration; and Defendant requests that the Commissioner's decision be affirmed.

Thereafter, Plaintiff filed a request to submit "new" evidence, that is, a February 6, 2006 surgical report, which Defendant has opposed.   The Court has taken the parties' Joint Stipulation and additional briefing under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on October 23, 2002. (Administrative Record ("A.R.") 46-48.)  Plaintiff claims to have been disabled since June 12, 2002, due to a back injury and a broken Harrington rod on fusion of the L5-S1 levels.  (A.R. 18, 46.)  Plaintiff has past relevant work experience as a maintenance technician (janitor/cleaner), maintenance technician supervisor, belt fabrication repairer, and wheelchair repairer.  (A.R. 18, 66073.)  Prior to filing his present DIB application, Plaintiff filed an application for DIB on October 9, 1990, which was granted pursuant to a January 14, 1992 decision.  (A.R. 17.)  Those benefits were terminated as of May 2000, and Plaintiff did not appeal that decision.  (*Id.*)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On July 13, 2004, Plaintiff, who was not represented, testified at a hearing before Administrative Law Judge Ellen Koldeway ("ALJ").  (A.R. 279-315.)  In an October 25, 2004 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision.  (A.R. 17-23, 4-6.)  Plaintiff thereafter filed suit in this Court on March 4, 2005, and is represented by counsel.

2

In a March 20, 2006 Request To Submit New And Material Evidence That Was Not Previously Available ("Request"), Plaintiff submitted a February 6, 2006 surgical report, which:  indicated that Plaintiff had surgery on January 30, 2006 for "[r]emoval of Wiltse pedicle screws at L5 and S1 and repair of pseudoarthrosis"; and stated Plaintiff's post-operative diagnosis to be "Retained orthopedic hardware, possible pseudoarthrosis." (Request, Ex. D.) On April 14, 2006, Defendant filed a Memorandum In Response And In Opposition To Plaintiff's Request To Submit Additional Evidence, And In Support Of Defendant's Cross-Motion To Deny Plaintiff's Requested Relief ("Response").  On April 20, 2006, Plaintiff filed a Reply To Defendant's Response To Plaintiff's Request To Submit New And Material Evidence That Was Not Previously Available ("Reply").

**SUMMARY OF ADMINISTRATIVE DECISION**

In her October 25, 2004 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability.  (A.R. 22.)  She found that Plaintiff's impairments, consisting of a back injury and broken Harrington rod on fusion of the L5-S1 levels, were "severe," but he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (*Id.*)

The ALJ found that Plaintiff had the following residual functional capacity for the relevant time period of June 12, 2002, through October 25, 2004:

3

[Plaintiff] could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds.  He could stand, walk and sit for a total of six hours, each, in an eight-hour workday. [Plaintiff] had no limitation in pushing and pulling activities.   He could  frequently  climb  ramp[s],  stairs, ladder[s], rope[s], and scaffolds, balance, kneel, crouch, and crawl.  He could occasionally stoop.  [Plaintiff's] visual, communicative,  and  environmental  limitations  were  not established.

(A.R. 22)  The ALJ found that Plaintiff's "allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision."  (*Id.*)

The ALJ further found that Plaintiff's past relevant work as a maintenance technician did not require the performance of work-related activities precluded by his residual functional capacity.  (A.R. 22.) Thus, the ALJ concluded that Plaintiff was not disabled.  (*Id.*)

**STANDARD OF REVIEW**

This  Court  reviews  the  Commissioner's  decision  to  determine whether  it  is  free  from  legal  error  and  supported  by  substantial evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's  decision  must  stand  if  it  is  supported  by  substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere  scintilla  but  less  than  a  preponderance  --  it  is  such  relevant

1    evidence that a reasonable mind might accept as adequate to support the
2    conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

3

4        Although this Court cannot substitute its discretion for that of
5    the Commissioner, this Court nonetheless must review the record as a
6    whole, "weighing both the evidence that supports and the evidence that
7    detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary</u>
8    <u>of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
9    <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is
10   responsible for determining credibility, resolving conflicts in medical
11   testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d
12   1035, 1039-40 (9th Cir. 1995).    This Court must uphold the
13   Commissioner's decision if it is supported by substantial evidence and
14   free from legal error, even when the record reasonably supports more
15   than one rational interpretation of the evidence. *Id*. at 1041; *see also*
16   <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d
17   595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th
18   Cir. 1995).

19

20                              **DISCUSSION**

21

22       Plaintiff alleges three disputed issues. <u>First</u>, Plaintiff contends
23   that the ALJ failed to assess his credibility properly.   <u>Second</u>,
24   Plaintiff contends that the ALJ failed to consider properly the June 10,
25   2004 opinion of Dr. Robert Hunt, his treating physician.   <u>Third</u>,
26   Plaintiff contends the ALJ failed to develop the record with respect to
27   Dr. Hunt's opinion.   (Joint Stip. at 3.)

28

                                    5

**A.    The ALJ Failed To Adequately Develop The Record Regarding Plaintiff's Limitations.**

Where, as here, the claimant was not represented, "it is incumbent upon the ALJ 'to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts.'" <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir. 1978)(citation omitted); *see also* <u>Higbee v. Sullivan</u>, 975 F.2d 558, 561-62 (9th Cir. 1991).  Thus, in determining whether a claimant's interests are adequately protected in an administrative proceeding when he is proceeding without counsel, "the issue is [whether] . . . the administrative law judge met the heavy burden imposed by [<u>Cox</u>]." <u>Vidal v. Harris</u>, 637 F.2d 710, 714 (9th Cir. 1981)(quotations omitted).

In addition, 20 C.F.R. §§ 404.1512(e) and 416.912(e) generally describe an ALJ's duty to develop the record with respect to the evidence submitted by a claimant's treating physician and provide that:

(e) When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical

6

source when the report from your medical source contains a
conflict or ambiguity that must be resolved, the report does
not contain all the necessary information, or does not appear
to be based on medically acceptable clinical and laboratory
diagnostic techniques.  We may do this by requesting copies of
your medical source's records, a new report, or a more
detailed report from your medical source, including your
treating source, or by telephoning your medical source.  In
every instance where medical evidence is obtained over the
telephone, the telephone report will be sent to the source for
review, signature and return.

(2) We may not seek additional evidence or clarification
from a medical source when we know from past experience that
the source either cannot or will not provide the necessary
findings.

20 C.F.R. §§ 404.1512(e), 416.912(e).  *See also* <u>Thomas v. Barnhart</u>, 278
F.3d 947, 956-57, 959 (9th Cir. 2002)(requirement in 20 C.F.R. §
404.1512(e), that the Commissioner re-contact treating sources, is
triggered only where the information from the treating sources is
inadequate to make a determination); <u>Brown v. Heckler</u>, 713 F.2d 441,
442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to fully
develop the record, even if the claimant is represented by counsel).

Plaintiff contends that the ALJ failed to:  consider appropriately
Dr. Hunt's June 10, 2004 assessment, in which he opined that Plaintiff
was not capable of full-time work; and provide specific or legitimate

7

reasons for rejecting Dr. Hunt's opinion. (Joint Stip. at 11-12.) In addition, Plaintiff contends that, at the hearing, the ALJ was made aware of additional records available from Dr. Hunt, but the ALJ improperly failed to obtain such records before rendering her decision. (Joint Stip. at 13.) Plaintiff further contends that the evidence on which the ALJ relied in determining his residual functional capacity, the February 20, 2003 opinion of Dr. Sohn, a state agency physician, was not reliable.

In a June 10, 2004 assessment, Dr. Hunt, Plaintiff's treating physician, opined that Plaintiff had the following limitations: standing, sitting, and walking for a total of not more than a half hour at one time and not more than one and a half hours during an entire day; lifting and carrying only up to five pounds occasionally; not using his feet for repetitive movements such as pushing and pulling of leg controls; bending and reaching only occasionally and never squatting, crawling, or climbing; and having total limitations from working in environments involving unprotected heights, being around moving machinery, and being exposed to marked changes in temperature and humidity, moderate limitations in driving automotive equipment, and mild limitations in being exposed to dust, fumes, and gases. (A.R. 278.)

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Social Security Ruling 96-2p; *see also* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(opinions of treating physicians are entitled to great deference). When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific

8

and legitimate reasons for doing so, supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled). Broad and vague reasons will not suffice for rejecting the treating physician's opinion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). When a treating doctor's opinion is uncontradicted, it may be rejected by an ALJ only "for 'clear and convincing' reasons supported by substantial evidence in the record." Holohan v. Massanari, 246 F.3d 1195, 1202-03 (9th Cir. 2001)(citation omitted); Reddick, 157 F.3d at 725.

In rejecting Dr. Hunt's June 10, 2004 assessment, the ALJ stated:

> On June 10, 2004, his treating physician, Robert Hunt, M.D., completed a residual functional capacity assessment. Dr. Hunt opined that [Plaintiff] could stand, walk and sit for a total of a half hour in an eight-hour workday. He could frequently lift and carry up to five pounds. He could not use feet for repetitive movements in pushing and pulling of leg controls, bilaterally. He could not squat, crawl, and climb. In addition, [Plaintiff] had total restrictions in unprotected heights, being around moving machinery, and exposure to marked changes in temperature and humidity (Ex. B9F/1). The Administrative Law Judge finds this assessment unpersuasive because it is unsupported by objective medical findings. Accordingly, this assessment is given little weight.

1 | (A.R. 21.)

2

3    At the hearing, Plaintiff identified Dr. Hunt as his treating

4 | physician and described one record he knew was missing from the file,

5 | namely, "the last P&S report from Dr. Hunt." (A.R. 282, 286.) Although

6 | the ALJ's assistant provided Plaintiff with an envelope to use to

7 | forward this record to the ALJ (A.R. 307), evidently no further records

8 | from Dr. Hunt were provided to the ALJ following the hearing and prior

9 | to the ALJ's October 25, 2004 decision.

10

11    Plaintiff now appends to his Joint Stipulation additional records

12 | from Dr. Hunt, consisting of: 1) Dr. Hunt's July 12, 2004 report noting

13 | that Plaintiff's condition had worsened since his condition was deemed

14 | "permanent and stationary" on October 21, 2003, and finding more

15 | restricted work limitations consisting of "light" work and "no weight-

16 | bearing or sitting for more than 30 minutes at a time without the

17 | opportunity to change position for up to 30 minutes according to need";

18 | 2) Dr. Hunt's progress notes for the period from June 11, 2003, to

19 | December 9, 2004; 3) Dr. Hunt's May 15, 2003 report, which notes that he

20 | was unable to comment regarding Plaintiff's permanent disability status

21 | and that surgery was recommended, but Plaintiff was afraid to undergo

22 | such surgery; and 4) Dr. Hunt's March 30, 2004 report noting that

23 | Plaintiff reported that his symptoms had worsened due to participating

24 | in vocational rehabilitation training classes and finding that Plaintiff

25 | was temporarily totally disabled. (Joint Stip., Exs. A-C.)

26

27    Certainly, as Plaintiff's treating physician, Dr. Hunt's records

28 | (as appended to the Joint Stipulation) bear directly on his residual

functional capacity.  These records generally fall within the relevant time period and are not contained in the record. [1]  It is unclear what efforts were undertaken to develop the record, as a review of the record reveals no effort by the Commissioner to obtain additional records from Plaintiff's treating physicians prior to or following the hearing. After learning of the existence of further records from Dr. Hunt, the ALJ should have sought to obtain his records, especially because Plaintiff was not represented by an attorney at the hearing.  Cox, 587 F.2d at 991; see also Higbee, 975 F.2d at 561-62.

Defendant objects to the evidence Plaintiff appends to the Joint Stipulation, contending that Plaintiff has not shown that such evidence is "new and material" or that there is "good cause" for Plaintiff's failure to have submitted such evidence earlier.  (Joint Stip. at 15, citing Orteza v. Shalala, 50 F.3d 748, 751 (9th Cir. 1995); Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985)).  However, in view of the fact that most of these records existed prior to the ALJ's October 25, 2004 decision, and that the ALJ had a duty to "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts," this evidence presumably would have been part of the record had the record been properly developed.  Considering the fact that Plaintiff was not represented at the hearing, and the record does not clearly show what efforts were undertaken to obtain Plaintiff's treating records in the first instance, it is not proper to penalize Plaintiff by excluding this evidence at this juncture.  Moreover, the cases Defendant relies

---

[1]      These records contain one record shortly following the ALJ's October 25, 2004 decision, a December 9, 2004 progress report.  (Joint Stip., Ex. B.)

upon are distinguishable. *See* <u>Orteza</u>, 50 F.3d at 751 (rejecting the claimant's attempt to submit a letter appended to his appellate brief from his physician setting forth his intended meaning of a word used in a prior medical record); <u>Key</u>, 754 F.2d at 1551 (rejecting a claimant's attempt to submit a new expert report regarding his impairments after failing to succeed on his disability claim in the agency and district court hearings).

Further, Dr. Hunt's records contain references to objective testing and explain his monitoring of Plaintiff's condition and, therefore, support and provide a basis for his June 10, 2004 opinion regarding Plaintiff's limitations. (*See* Joint Stip., Ex. A at 6 -- Dr. Hunt's July 12, 2004 report citing May 30, 2003 CT scan, March 16, 2004 MRI, and March 23, 2004 nerve conduction velocity studies; Ex. C at 8 -- Dr. Hunt's April 24, 2003 report citing December 17, 2002 x-ray.)  In addition, because these records show Dr. Hunt found that Plaintiff's condition had worsened and his limitations had increased following Plaintiff's return to vocational rehabilitation in March 2003, they further suggest that Dr. Tran's March 14, 2003 report, as cited by the ALJ (*viz.*, limiting Plaintiff to work with restrictions of no repetitive bending, no lifting over 25 pounds, and needing to sit 15 minutes after 45 minutes of standing and walking), was not necessarily accurate in describing Plaintiff's capabilities. (Joint Stip., Ex. C -- Dr. Hunt's March 30, 2004 report.)  Therefore, these records demonstrate that the ALJ's reasons for rejecting Dr. Hunt's June 10, 2004 opinion as "unsupported" and inconsistent with other evidence are not legitimate.

With respect to the February 6, 2006 report regarding Plaintiff's

1   January 30, 2006, surgery which is appended to Plaintiff's March 20,

2   2006 Request, Defendant argues that this medical record does not pertain

3   to Plaintiff's condition for the period at issue (June 12, 2002 to

4   October 25, 2004).  The February 6, 2006 report only describes the

5   surgical procedure itself (*to wit*, the removal of Wiltse pedicle screws

6   and L5 and S1 and repair of pseudoarthrosis), but neither describes nor

7   provides any limitations resulting from that injury, either before or

8   after the operation.  Nevertheless, this record shows that Plaintiff's

9   condition did eventually require surgery, suggesting that his condition

10  likely was not improving during the relevant time period.  Thus, even

11  though this record is dated well after the end of the period of

12  disability in this case, it further supports the conclusion that remand

13  of this case is necessary to develop the record in order to determine

14  Plaintiff's residual functional capacity for the time period at issue.

15  Accordingly, for that reason, Plaintiff's Request of March 20, 2006 is

16  GRANTED.

17

18      To the extent that the ALJ elects to seek an opinion regarding

19  Plaintiff's residual functional capacity during the relevant time period

20  from a medical expert, the expert should be provided with this surgical

21  report in addition to the fully developed record from the relevant time

22  period.  Where, as in this case, the alleged impairment may be

23  progressive and unimproved, medical evidence from outside the period of

24  disability may be highly relevant.  *See*, *e.g.*, <u>Lester</u>, 81 F.3d at 832

25  (medical evaluations made after the expiration of a claimant's insured

26  status is relevant to an evaluation of the onset date of pre-expiration

27  condition.)

28

1    Finally, the Court agrees with Plaintiff's assertion that the ALJ
2    improperly relied upon the February 20, 2003 Physical Residual
3    Functional Capacity Assessment completed by Dr. Sohn, a non-examining
4    state agency physician, in determining Plaintiff's residual functional
5    capacity.  In this assessment, although Dr. Sohn cited objective testing
6    (*viz.*, a October 6, 2002 CT scan of the lumbar spine) in support of his
7    conclusions, Dr. Sohn did not describe the precise records he reviewed
8    and noted that he had not reviewed any "treating or examining source
9    statement(s) regarding [Plaintiff's] physical capacities." (A.R. 260,
10   265.)  Thus, it is unclear whether Dr. Sohn based his assessment on a
11   complete picture of Plaintiff's condition.

12

13   As a result, the ALJ's reliance on this assessment was error.  *See*
14   20 C.F.R. §§ 404.1517, 416.917 ("[i]f we arrange for [a consultative]
15   examination or test, . . . [w]e will also give the examiner any
16   necessary background information about your condition.");   *see also*
17   Hurstrom v. Barnhart, 233 F. Supp. 2d 1159, 1166 (S.D. Io. 2002)(holding
18   that the ALJ's finding of no severe impairment lacked substantial
19   evidentiary support when "[t]here is no indication that either [of the
20   two consultative physicians] had access to any of the medical records
21   which were available at the time of their examinations. . . .  Even if
22   Plaintiff told the consulting doctors that he had no limitations, these
23   statements are not credible in light of the numerous laboratory reports
24   showing that his blood sugar is out of control."); Ladue v. Chater, 1996
25   WL 83880, *5 (N.C. Cal. Feb. 16, 1996)(requiring remand where "[t]he ALJ
26   failed to conform to 20 C.F.R. § 404.1517 requiring that the
27   consultative examiner be provided with necessary background information
28   regarding the claimant's condition," when it appeared form the record

1    that the ALJ gave examiner's consultative report considerable weight,

2    even though the examiner lacked important background information

3    regarding the claimant).

4

5        Accordingly, the ALJ's failure to adequately develop the record and

6    her improper rejection of Dr. Hunt's opinion constitute error.

7

8    **B.    The ALJ Improperly Rejected Plaintiff's Credibility**.

9

10       The law is well-settled that, once a disability claimant produces

11   objective medical evidence of an underlying impairment, the ALJ may not

12   discredit the claimant's testimony regarding her subjective symptoms

13   merely because they are not corroborated by objective evidence.

14   Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001); Bunnell v.

15   Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d

16   597, 601 (9th Cir. 1989).  As the Ninth Circuit has explained:

17

18       [A]n ALJ's finding that a claimant generally lacked

19       credibility is a permissible basis to reject excess pain

20       testimony.  But, because a claimant need not present clinical

21       or diagnostic evidence to support the severity of his pain,

22       *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)

23       (stating that "it is the very nature of excess pain to be out

24       of proportion to the medical evidence"), a finding that the

25       claimant lacks credibility cannot be premised wholly on a lack

26       of medical support for the severity of his pain.

27

28   Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997)  .

This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  <u>Bunnell</u>, 947 F.2d at 347.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993); <u>Light</u>, 119 F.3d at 792.  In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider:  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Smolen</u>, 80 F.3d at 1284.

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically).  However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Orteza</u>, 50 F.3d at 750 (the ALJ's findings must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."). When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests that the complaints are not credible. *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688 (9th Cir. 1979); *see also* <u>Lester</u>, 81 F.3d at 834 (an ALJ may reject a plaintiff's testimony based on lack of credibility only if the ALJ states specific and cogent reasons for doing so).

In rejecting Plaintiff's claimed limitations and symptoms, the ALJ explained, in part, as follows:

> Although [Plaintiff] may have some limitations due to his severe impairments, the undersigned finds that his allegations were not supported by the evidence of record. The claimant presented himself as being much worse than that which is contained in the record. The objective medical evidence did not document medical conditions likely to cause the extreme limitations that [Plaintiff] alleges. Similarly, the treatment notes did not show the muscle atrophy that was likely to accompany the level of inacivity that [Plaintiff] alleges. If [Plaintiff's] condition was as he alleges, it [is] likely that there would be some objective medical evidence to support such severe limitations. [Plaintiff] has responded well to his treatment and was expected to continue to do so. At the hearing, the claimant tolerated the proceedings, sat and stood very well. Also, he testified that

17

1  he has a driver's license.   Also, Dr. Tran released
2  [Plaintiff] to work at light duty.

4       In addition, [Plaintiff's] daily activities were
5  inconsistent with his complaints of debilitating physical
6  impairment. [Plaintiff] has no significant difficulty with his
7  activities of daily living.   At the hearing, [Plaintiff]
8  testified that he lies down and his wife takes care of all the
9  cooking, but [Plaintiff] also testified that he took a trip to
10  San Jose to see his mother.   Also, [Plaintiff] watches his
11  daughter.  If [Plaintiff's] condition was a debilitating as he
12  alleges, it is unlikely that he would be able to take his trip
13  to San Jose and take care of his daughters.

15       . . . .   While none of the above factors are conclusive by
16  themselves, after a review of the entire record, the
17  undersigned finds that [Plaintiff's] allegations are not fully
18  credible to the extent alleged.   Despite [Plaintiff's]
19  impairments, [Plaintiff] testified that he took a trip to San
20  Jose and watches his daughter.   His subjective complaints can
21  be considered credible only to the extent that they are
22  supported by the evidence of record.

24  (A.R. 20.)

26  Plaintiff contends that the ALJ failed to provide proper reasons
27  for rejecting his testimony regarding his symptoms and limitations.
28  (Joint Stip. at 4.)   In particular, Plaintiff contends that the ALJ

improperly discounted his testimony based upon a lack of objective evidence.  In explaining that "[t]he objective medical evidence did not document medical conditions likely to cause the extreme limitations that [Plaintiff] alleges" as a reason to reject his credibility, the ALJ erred.  The ALJ acknowledged that the record contains objective evidence demonstrating positive findings of his claimed impairments.  (See A.R. 19.)  The law is well-established that it is improper require a claimant to adduce objective medical evidence to support the severity of her asserted pain or symptoms.  See Tonapetyan, 242 F.3d at 1147-48; Bunnell, 947 F.2d at 345; Fair, 885 F.2d at 601; see also Cotton, 799 F.2d at 1407 ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").  Moreover, the clarification and development of the record on remand pertaining to Dr. Hunt's records could shed more light on and further bolster Plaintiff's claimed symptoms and limitations.

Plaintiff further contends that the ALJ improperly rejected his claimed limitations based on his positive response to treatment, his demeanor at the hearing, and his participation in limited daily activities.  (Joint Stip. at 5.)  Specifically, Plaintiff contends that the ALJ's assertion that he responded "well" to treatment is in error, as his condition has not improved and his physicians consistently have recommended surgery, although he was afraid to undergo such surgery due to its attendant risks during the relevant time period.  (Joint Stip. at 4-5.)  Indeed, as noted in Dr. Tran's October 25, 2002 report, Dr. Paul Parks advised Plaintiff of the risks of surgery and informed him that

there was only a 50/50 chance that such surgery would be successful.[2] Thus, the ALJ's assertion that Plaintiff was expected to continue to respond to the non-invasive treatment he was receiving during the claimed time period is not supported by substantial evidence.

The ALJ also improperly concluded that Plaintiff's claimed limitations and symptoms were not credible in view of Plaintiff's ability to sit and stand "very well" at the hearing. *See* Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984)(citing Day v. Weinberger, 522 F.2d 1154, 1156-57 (9th Cir. 1975)("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible."); Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) ("The ALJ's reliance on his personal observations of [claimant] at the hearing has been condemned as 'sit and squirm' jurisprudence."); Lewis v. Bowen, 675 F. Supp. l205, l209 (C.D. Cal. 1987)(same).

Furthermore, the ALJ mischaracterized Plaintiff's testimony and reached inappropriate conclusions with respect to his daily activities. (A.R. 20.) Specifically, the ALJ pointed out that, despite Plaintiff's

---

[2]   (A.R. 132; *see also* A.R. 99 -- Dr. Gregory Carlson's December 2, 2002 report describing surgical risks, including nerve root injury, bowel and bladder dysfunction, bleeding, infection, hardware problems, and pseudarthrosis; A.R. 136 -- Dr. Parks's October 22, 2003 report noting: "I have explained the significant perioperative risk associated with this type of procedure and have indicated to [Plaintiff] there is no way I can guarantee that this surgery will result in the degree of back pain relief he is seeking.")   In addition, at the hearing, Plaintiff testified that seven out of eight physicians had recommended against surgery, because of a "real risk of ending up in a [wheelchair]." (A.R. 286.)

claimed limitations, he drove to San Jose to see his mother and took care of his daughter. (A.R. 20.) However, Plaintiff testified at the hearing that he traveled to San Jose under exigent circumstances, as he had been told his mother had suffered a heart attack. (A.R. 300-01.) He further testified that it took a very long time to reach his destination, 12 hours, because he stopped frequently to rest during this trip, and he had not taken any other trips out of the county aside from this one since his alleged onset date. (A.R. 300-01.) With respect to his care of his daughters, Plaintiff testified that his children living at home were 11, 12, 15, and 16 at the time of the hearing and he "rarely" took care of them,[3] but the ALJ did not question him further as to his interaction with his children and simply concluded that Plaintiff must not be as limited as he contends because he "takes care of his daughters." (A.R. 20, 283, 301.) However, in an attachment to his November 1, 2004 Request for Review of Hearing Decision, Plaintiff stated that his daughters are sufficiently old enough that they do not need much care-taking, and in fact, they help take care of him. (A.R. 9.) *See* Reddick, 157 F.3d at 722-23; *see also* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion).

In addition, to the extent that the ALJ broadly rejected Plaintiff's credibility based on his ability to engage in general daily activities, that rejection is further flawed because the ALJ did not explain how the ability to perform these non-work-related activities

---

[3] In his daily activities questionnaire, Plaintiff did not indicate that he takes care of his children. (A.R. 81-83.)

1  reasonably translates to the ability to perform job functions on a
2  continuous basis for a 40-hour work week.  *See* <u>Gonzalez v. Sullivan</u>, 914
3  F.2d 1197, 1201 (9th Cir. 1990)(daily activities may not be relied upon
4  to support an adverse credibility decision where those activities do not
5  affect the claimant's ability to perform appropriate work activities on
6  an ongoing and daily basis); <u>Smolen</u>, 80 F.3d at 1283 n.7 ("many home
7  activities may not be easily transferable to a work environment where it
8  might be impossible to rest periodically or take medication.").  While
9  the ALJ may look at Plaintiff's daily activities as a basis for
10 determining whether Plaintiff can perform certain work, the ALJ's
11 decision fails to demonstrate how Plaintiff's daily activities translate
12 into the ability to be engaged in full-time work.  "[D]isability
13 claimants should not be penalized for attempting to lead normal lives in
14 the face of their limitations." <u>Reddick</u>, 157 F.3d at 722 (rejecting an
15 adverse credibility finding premised on the claimant's ability to
16 perform daily activities, when the level of activity was not
17 inconsistent with her claimed limitations).  "One does not need to be
18 'utterly incapacitated' in order to be disabled," and the ability to
19 perform normal daily activities outside of the work setting does not
20 detract from a claimant's "overall credibility." <u>Vertigan v. Halter</u>,
21 260 F.3d 1044, 1050 (9th Cir. 2001).

23     Accordingly, the ALJ's credibility rejection constitutes reversible
24 error.

26 **C.   <u>Remand Is Necessary</u>**.

28     In view of the ALJ's failure to adequately develop the record

22

regarding Plaintiff's physical limitations and her improper credibility rejection, this action must be remanded. *See* <u>Hibgee</u>, 975 F.2d at 562-63 (remanding case in order to develop the record where the claimant was not represented at the initial administrative hearing); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful).

## CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: June 23, 2006

_____
/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

23